**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

DAWN C. W.,[1]

                Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Soc. Sec. Admin.,

                Defendant.      Case No. 3:20-cv-00242-SLG

## DECISION AND ORDER

On or about August 12, 2017, Dawn C. W. ("Plaintiff") protectively filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").[2]  In her application, Plaintiff alleged disability beginning January 16, 2016.[3] Plaintiff has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[4]  Plaintiff's opening brief asks the Court to vacate and remand the agency's decision for a de novo hearing and a new decision.[5]  The Commissioner filed

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.

[3] Administrative Record ("A.R.") 83.

[4] Docket 1 (Plaintiff's Compl.).

[5] Docket 19 at 23 (Plaintiff's Br.).

an Answer and a brief in opposition to Plaintiff's opening brief.[6]  Plaintiff filed a reply brief.[7]

Oral argument was not requested and was not necessary to the Court's decision.  This

Court has jurisdiction to hear an appeal from a final decision of the Commissioner of

Social Security.[8]  For the reasons set forth below, Plaintiff's request for relief is granted.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned

unless it is either not supported by substantial evidence or is based upon legal error.[9]

"Substantial evidence" has been defined by the United States Supreme Court as "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."[10]  Such evidence must be "more than a mere scintilla," but may be "less than

a preponderance."[11]  In reviewing the agency's determination, the Court considers the

evidence in its entirety, weighing both the evidence that supports and that which detracts

from the administrative law judge ("ALJ")'s conclusion.[12]  If the evidence is susceptible to

more than one rational interpretation, the ALJ's conclusion must be upheld.[13]  A reviewing

---

[6] Docket 15 (Answer); Docket 24 (Defendant's Br.).

[7] Docket 25 (Reply).

[8] 42 U.S.C. § 405(g).

[9] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[10] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[11] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[12] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[13] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d

court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [he] did not rely."[14] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[15]

## II.    DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[16]  In addition, Supplemental Security Income ("SSI") may be available to individuals who are age 65 or older, blind, or disabled, but who do not have insured status under the Act.[17]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[18]

The Act further provides:

---

920, 921 (9th Cir. 1971)).

[14] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[15] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[16] 42 U.S.C. § 423(a).

[17] 42 U.S.C. § 1381a.

[18] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 3 of 22

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[19]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[20] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[21] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[22] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[23] The steps, and the ALJ's findings in this case, are as follows:

---

[19] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[20] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[21] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[22] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[23] *Tackett*, 180 F.3d at 1101.

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[24] *The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 16, 2016.*[25]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[26] *The ALJ determined that Plaintiff had the following medically determinable severe impairments: osteoarthritis of the cervical and thoracic spine; multilevel degenerative disc disease; and status post right rotator cuff repair.*[27] *Rheumatoid arthritis and fibromyalgia were found to be not medically determinable impairments.*[28]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth

---

[24] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[25] A.R. 15.

[26] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[27] A.R. 16.

[28] A.R. 18.

step.[29]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[30]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[31]  *The ALJ determined that Plaintiff retained the residual functional capacity to perform light exertional work, but with the following limitations: Plaintiff is able to lift and/or carry ten pounds frequently and twenty pounds occasionally.  She is able to stand and/or walk for six hours in an eight-hour workday with normal breaks.  She is able to sit for about six hours in an eight-hour workday with normal breaks.  She is able to perform work limited to occasional stooping and frequent kneeling, crouching, crawling, and climbing of ramps or stairs.  She is able to perform work limited to never climbing ladders, ropes, or scaffolds.  She must have no exposure to unprotected heights.*[32]

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the

---

[29] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[30] A.R. 18.

[31] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[32] A.R. 19.

Case 3:20-cv-00242-SLG   Document 27   Filed 03/16/22   Page 6 of 22

claimant can still do her past relevant work, the claimant is deemed not to be disabled.[33]

Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was capable of performing past relevant work as a jewelry salesperson.*[34]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[35] *The ALJ did not reach this determination because the ALJ determined that Plaintiff was capable of performing past relevant work.*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 16, 2016, through the date of the ALJ's decision.[36]

## III.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1959 and was 56 years old on the alleged disability onset date.[37]  Plaintiff reported last working as a retail department manager at a home-improvement store. She also reported working in the past as a fine jewelry salesperson. In January 2018, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[38]  Plaintiff requested a hearing before an

---

[33] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[34] A.R. 24.

[35] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[36] A.R. 25.

[37] A.R. 82.

[38] A.R. 13, 82–91.

Administrative Law Judge, and Plaintiff appeared and testified with representation at a hearing held on September 26, 2019, in Anchorage, Alaska, before ALJ Paul T. Hebda.[39] On November 22, 2019, the ALJ issued an unfavorable ruling.[40]  On August 8, 2020, the Appeals Council denied Plaintiff's request for review.[41]  On September 28, 2020, Plaintiff appealed the Commissioner's final decision to this Court; she is represented by counsel in this appeal.[42]

## IV.    DISCUSSION

Plaintiff alleges that the ALJ "erred at step two by finding that rheumatoid arthritis (RA) and fibromyalgia were not medically determinable impairments and therefore not severe."[43]  Specifically, Plaintiff asserts that the ALJ misunderstood the records of treating rheumatologist Dr. Ryan Ragle, and failed to account for Plaintiff's pain; "[c]onsequently, the residual functional capacity is erroneous."[44]   The Commissioner argues that "substantial evidence supports the ALJ's finding that [Plaintiff] did not provide evidence ruling out other disorders as causing her symptoms" as required by Social Security ruling 12-2p.[45]  The Commissioner also maintains that "the ALJ reasonably concluded that the

---

[39] A.R. 13.

[40] A.R. 13–25.

[41] A.R. 1.

[42] Docket 1.

[43] Docket 19 at 2.

[44] Docket 19 at 2.

[45] Docket 24 at 6.

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 8 of 22

objective medical evidence did not show either [RA or fibromyalgia] to be a medically determinable impairment."[46]

Plaintiff applied for benefits on or about August 12, 2017, so the new regulations apply to her claim. Under the new regulations, the definition of what constitutes a medical opinion has narrowed, focusing on what the claimant can do despite her impairments and what work-related limitations are present.[47] The new regulations now define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)  Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)  Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)  Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)  Your ability to adapt to environmental conditions, such as temperature or fumes.[48]

---

[46] Docket 24 at 5.

[47] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

[48] 20 C.F.R. § 404.1513(a)(2).

The new regulations provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule.[49] Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[50] Supportability and consistency are now considered the most important factors for evaluating persuasiveness.[51] Supportability and consistency are explained as follows in the regulations:

> Supportability: The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> Consistency: The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[52]

Generally, these are the only two factors the ALJ is required to address in his decision.[53]

---

[49] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[50] 20 C.F.R. § 404.1520c(c).

[51] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.1520c(b)(2) (for claims filed on or after March 27, 2017).

[52] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[53] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). ALJs must discuss their

The new regulations also provide that for claims filed on or after March 27, 2017, a "[s]tatement[ ] that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work" would be "neither valuable nor persuasive." As a result, the ALJ is not required to "provide any analysis about how [the ALJ] considered such evidence in [his] determination or decision, even under § 404.1520c."[54]

### A. The ALJ's determination that fibromyalgia was not a medically determinable impairment is not supported by substantial evidence.

Plaintiff asserts that the ALJ "erred at step two by finding that rheumatoid arthritis and fibromyalgia were not medically determinable impairments and therefore not severe."[55] A medically determinable impairment is an impairment that results "from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[56] A physical or mental impairment "must be established by objective medical evidence from an acceptable medical source."[57]

As to fibromyalgia, Plaintiff maintains that the ALJ "did not assess the persuasive weight of Dr. Ragle's extensive medical Treatment notes, Chart notes, and clinic

---

consideration of the other three factors only if they "find that two or more medical opinions or prior administrative medical findings about the same issue are equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3) & 404.920c(b)(3).

[54] 20 C.F.R. § 404.1520b(c)(3)(iv).

[55] Docket 19 at 2.

[56] 20 C.F.R. § 416.921.

[57] 20 C.F.R. § 416.921.

diagnostic data that are associated with his ample medical documentation of treating [Plaintiff] from April 2016 throughout the period at issue here."[58]  Plaintiff contends that fibromyalgia has been established diagnostically by objective medical evidence from Dr. Ragle, an acceptable medical source.[59]  The Agency responds that this issue is governed by Social Security Ruling ("SSR") 12-2p, which describes the evidence needed to establish that fibromyalgia is a medically determinable impairment ("MDI") for the claimant.[60]  That ruling describes two ways that fibromyalgia may be determined to be an MDI: by meeting either the criteria set out in the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria.[61]

The ALJ found that Plaintiff's "diagnosis of fibromyalgia is not consistent with the diagnosis requirement of the 1990 American College of Rheumatology (ACR) Criteria or the 2010 ACR Preliminary Diagnostic Criteria for the Classification of Fibromyalgia."[62] The ALJ determined that "there are no tender points to the degree required and no evidence that other conditions were ruled out prior to attaching a fibromyalgia diagnosis. Accordingly, there are no objective medical signs or laboratory findings to support the

---

[58] Docket 19 at 13.

[59] Docket 19 at 20.

[60] Docket 24 at 5.

[61] SSR 12-2P (July 25, 2012) (available at 2012 WL 3104869).  "Social Security Rulings [ ] do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009).

[62] A.R. 18 (citing SSR 12-2p).

existence of . . . fibromyalgia."[63]  In other words, rather than finding Plaintiff's fibromyalgia diagnosis to be "not severe" at step two, the ALJ found that Plaintiff did not have the MDI of fibromyalgia in the first instance.

Defendant maintains that there is insufficient evidence to establish fibromyalgia as a medically determinable impairment.  Specifically, Defendant asserts that a diagnosis of fibromyalgia "is insufficient to establish a medically determinable impairment" and that "the objective medical evidence—that is, the signs and laboratory findings—were equivocal."[64]

The ALJ's ruling describes two ways that fibromyalgia may be determined to be an MDI, only one of which requires tender points. The other set of diagnostic criteria in SSR 12-2p (the 2010 ACR Preliminary Diagnostic Criteria) lists:

> (1) A history of widespread pain—that is, pain in all quadrants of the body . . . and axial skeletal pain (the cervical spine, anterior check, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months.  The pain may fluctuate in intensity and may not always be present.
>
> (2) Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), or waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> (3) Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.[65]

---

[63] A.R. 18.

[64] Docket 24 at 8 (citing 20 C.F.R. § 404.1521).

[65] SSR 12-2P, 2012 WL 3104869, at *3.

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 13 of 22

The third criterion appears to be the primary basis for the ALJ's decision that Plaintiff does not have a medically determinable impairment of fibromyalgia under SSR 12-2p. The ALJ determined that Plaintiff did not meet the SSR 12-2p criteria because there was "no evidence that other conditions were ruled out prior to attaching a fibromyalgia diagnosis."[66] This conclusion represents the full scope of the ALJ's analysis. He did not reference the record or offer evidence to support or explain this finding. But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."[67] The ALJ's conclusory statement is insufficient and does not address portions of the record that contain evidence that Dr. Ragle had ruled out other conditions.[68]

A claimant need only present some evidence that other possible conditions were excluded.[69] Here, the record contains evidence that Dr. Ragle excluded other disorders: He noted no radiographic evidence of RA in Plaintiff's hands and observed that Plaintiff had "multiple atypical historical complaints that would not necessarily be consistent with rheumatoid arthritis."[70] Dr. Ragle noted that Plaintiff's "pattern of symptoms . . . would not

---

[66]A.R. 18.

[67] *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

[68] *Cf. Regennitter v. Comm'r of the Soc. Sec. Admin.,* 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion.").

[69] SSR 12-2p (providing the SSA may find a person has a medically determinable impairment of fibromyalgia "if he or she has [among other things] ... [e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded").

[70] A.R. 453.

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 14 of 22

necessarily be typical of inflammatory arthritis." He also ruled out gout and adult-onset Still's disease.[71] He ordered lab tests that showed no Lupus anticoagulant.[72] During that same examination, Dr. Ragle determined that Plaintiff "demonstrates significant diffuse soft tissue tenderness in the pattern character suggestive of fibromyalgia spectrum disease. She also describes anxiety, exercise intolerance and daytime fatigue which can also be associated with fibromyalgia,"[73] and he noted a "diagnosis" of fibromyalgia.[74]

Dr. Ragle repeatedly noted that Plaintiff's "overall pain is likely multifactorial with rheumatoid arthritis, osteoarthritis and fibromyalgia contributing."[75] While this indicates that there may be several sources of Plaintiff's pain, it does not mean that Dr. Ragle did not exclude other disorders that could cause "repeated manifestations of symptoms, signs, or co-occurring conditions" of fibromyalgia other than pain. The ALJ seems to suggest that the existence of other conditions precludes an MDI of fibromyalgia. But "SSR 12-2p does not require fibromyalgia to be a stand-alone impairment."[76]

The ALJ did not specifically address whether he found Dr. Ragle's opinions persuasive but stated that "[t]here are other opinions offered well prior to the current

---

[71] A.R. 453–54.

[72] A.R. 454.

[73] A.R. 453, 1237.

[74] A.R. 454.

[75] A.R. 454; *accord* A.R. 1036, 1096, 1237, 1259

[76] *Swales v. Saul*, 852 Fed. App'x 253, 255 (9th Cir. 2021) (unpublished); *see also Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (finding other medically determinable impairments to co-exist with fibromyalgia).

period at issue" and that "no articulation is required regarding evidence that is neither valuable or persuasive."[77]  And as Plaintiff points out, the ALJ incorrectly determined that there was a two-year gap in her appointments with treating physician Dr. Ragle. Specifically, the ALJ stated that Plaintiff first saw Dr. Ragle in April 2016 and then stated that Plaintiff had her "next visit with Dr. Ragle over two years later in October 2018."[78]  In fact, medical records demonstrate that Plaintiff had appointments with Dr. Ragle on April 21, 2016; August 17, 2016; November 15, 2016; February 28, 2017; June 26, 2017; October 10, 2017; April 10, 2018; October 12, 2018; and April 4, 2019.[79]  Because SSR 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days,'" the ALJ is required to consider the entire longitudinal record.  The fact that the ALJ failed to account for multiple visits Plaintiff had with Dr. Ragle indicates he did not properly consider the longitudinal record here and did not meaningfully consider all symptoms related to fibromyalgia.  The ALJ's conclusory statement rejecting Dr. Ragle's diagnosis is at odds with the record, and the ALJ's conclusion regarding the diagnosis of fibromyalgia is not supported by substantial evidence.

There is also evidence that Plaintiff would meet the first two criterion of the 2010 ACR Preliminary Diagnostic Criteria as set forth in SSR 12-2p.  The record is replete with references to Plaintiff's pain symptoms.    As to the second criterion of "repeated

---

[77] A.R. 23.

[78] A.R. 18.

[79]A.R. 452, 476–82, 1036, 1233, 1290.

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 16 of 22

manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions,"[80]

the medical records from Dr. Ragle are replete with Plaintiff's assertions of manifestations

of those symptoms, including anxiety and fatigue,[81] depression,[82] difficulty sleeping,[83]

dizziness and headaches and migraines,[84] muscle weakness,[85] dry eyes and blurred

vision,[86] nausea, vomiting, and constipation,[87] numbness/tingling,[88] and hair loss, skin

rash, and oral ulcers.[89] Dr. Ragle's chart notes, in conjunction with the record as a whole,

---

[80] "Symptoms, signs, or co-occurring conditions" include the following: Fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, irritable bowel syndrome, muscle pain, tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in abdomen, numbness or tingling, dizziness, insomnia, constipation, pain in the upper abdomen, nausea , nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, fives or welts, ringing in ears, vomiting, heartburn, oral ulcers, loss of tests, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, each bruising, hair loss, frequent urination, bladder spasms, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. SSR 12-2P, 2012 WL 3104869, at *3 and nn. 9, 10.

[81]A.R. 453 ("She also describes anxiety exercise intolerance and daytime fatigue which can also be associated with fibromyalgia."); A.R. 476, 477, 478, 479, 480, 481, 482.

[82]A.R. 481.

[83]A.R. 477, 478, 479, 480, 481.

[84]A.R. 476, 477, 478, 479, 480, 481, 482.

[85]A.R. 476, 477, 479, 480, 481, 482.

[86]A.R. 476, 477, 479, 480, 481, 482.

[87]A.R. 476, 478, 480.

[88]A.R. 476, 477, 479, 480, 481, 482.

[89]A.R. 477, 478, 479, 481, 482.

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 17 of 22

document six or more manifestations of fibromyalgia symptoms, signs, or co-occurring conditions that are identified in SSR 12-2p.

In sum, the ALJ failed to properly consider the longitudinal record of Plaintiff's fibromyalgia, and the ALJ's conclusion that other disorders were not excluded is not supported by substantial evidence.

### B. The ALJ's determination that rheumatoid arthritis was not a medically determinable impairment is not supported by substantial evidence.

The ALJ also found that "there are no medical signs or laboratory findings to substantiate the existence of [the] medically determinable impairment[] of rheumatoid arthritis."[90]  Specifically, the ALJ determined that "although the claimant's records indicate a diagnosis of 'seropositive' RA, a careful review of the claimant's laboratory findings reveals no evidence of any positive RA factor . . . ."[91]  The ALJ also determined that "claimant's right hand imaging . . . was not equivocal in identifying any RA signs, as the findings showed mild degenerative changes most likely related to *osteoarthritis* . . . [or] indicative of mild synovitis *or inflammatory arthropathy*."[92]  The ALJ cited to Dr. Ragle's notes for the premise that "it is 'somewhat difficult[] to confirm' the claimant's RA diagnosis as she 'has multiple atypical historical complaints that would not necessarily be consistent with rheumatoid arthritis."[93]

---

[90] A.R. 18.

[91] A.R. 18.

[92] A.R. 18 (emphases in original).

[93] A.R. 18.

The record includes documentation of Dr. Ragle continually noting a diagnosis of RA despite referencing of myriad other possible causes of her pain.[94] However, the ALJ focused on Dr. Ragle's notes that tended to minimize the presence of RA but did not address the medical records that are consistent with Dr. Ragle reaching the diagnosis of RA. To the extent the ALJ found that there was no "evidence of any positive RA factor," nothing in the record explains what constitutes a "positive RA factor" and the ALJ did not explain why a lack of positive findings negates or outweighs Dr. Ragle's diagnosis. At minimum, the ALJ must provide a more thorough explanation as to why the record does not support an MDI of RA.

The ALJ's conclusion regarding RA also suffers the same deficiency as it does regarding fibromyalgia: the ALJ failed to account for multiple visits Plaintiff had with Dr. Ragle, which indicates he did not properly consider the longitudinal record here and did not meaningfully consider all symptoms related to RA.

### C. The error was not harmless

The ALJ stated that he had "considered all symptoms relating to these nonmedically determinable impairments," including fibromyalgia and RA, in determining Plaintiff's residual functional capacity.[95] For this reason, the Commissioner contends that any error at step two was harmless.[96] However, in determining Plaintiff's residual functional capacity, the ALJ determined that "the claimant's statements concerning the

---

[94] AR. 452–54, 1036, 1224, 1236, 1259, 1287.

[95] A.R. 18.

[96] Docket 24 at 12.

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[97] The ALJ discredited Plaintiff's subjective descriptions of her limitations because she made "inconsistent statements and symptom magnification" statements to different medical providers on various days.[98] This analysis ignores that fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms."[99] As SSR 12-2p notes, the pain caused by fibromyalgia "may fluctuate in intensity and may not always be present."[100] And in determining the RFC, "SSR 12-2P recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'"[101] Had the ALJ correctly assessed whether fibromyalgia was medically determinable at step two, he may have found a reason for Plaintiff's varying accounts of her level of pain and symptoms from one day to the next other than that she was exaggerating her symptoms.

Plaintiff maintains that as a result of finding that fibromyalgia and RA are not medically determinable impairments, "the residual functioning capacity failed to include and/or to take account of the functional limitations of those impairments, with particular

---

[97] A.R. 20.

[98] A.R. 20–21.

[99] *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

[100] SSR 12-2p, 2012 WL 3104869, at *2.

[101] *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) (citing SSR 12-2p, 2012 WL 3104869, at *6).

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 20 of 22

attention to pain as a disabling impairment."[102]  Plaintiff also asserts error because "[p]ain was not posited as part of the decisive hypothetical to the vocational witness; rather it was included in the alternate hypothetical that was not accepted as part of the RFC but which produced disabling opinion from the vocational witness."[103]  Step two is intended to be a "de minimis screening device [used] to dispose of groundless claims."[104]  It is "not meant to identify the impairments that should be taken into account when determining the RFC."[105]  And yet the Ninth Circuit has held that an ALJ's failure to address an impairment at step two is harmless error only if the ALJ considered the limitations imposed by the impairment at a later step in the sequential disability evaluation.[106]  Here, the ALJ's error at step two was not harmless because he did not later consider the limitations imposed by fibromyalgia and RA.  The ALJ's error at step two was harmful and requires remand.

---

[102] Docket 19 at 8.

[103] Docket 19 at 18 (citing *Cooper v. Sullivan*, 880 F.2d 1152, 1158, n.13 (9th Cir. 1989) for the premise that "[a] vocational expert's testimony cannot constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations, including pain").

[104] *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005).

[105] *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017).

[106] *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding the ALJ's failure to consider bursitis at step two, if error, was harmless because the ALJ considered any limitations posed by the bursitis at Step Four). *Cf. Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding that ALJ's failure to explain why he rejected lay testimony was not harmless because a reasonable ALJ could find from that testimony that the claimant was unable to return to gainful employment).

**D. Scope of Remand**

Plaintiff asks the Court to vacate the final agency decision and remand to the Commissioner for a de novo hearing and new decision.[107] The "ordinary remand rule" applies to disability cases. Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[108] In this case, the proper remedy is reversal and remand for further administrative proceedings, including a new hearing and the issuance of a new decision with appropriate findings at each step of the sequential evaluation.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence in the record. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 19 is GRANTED, and this matter is REMANDED for further proceedings consistent with this Decision and Order. The Clerk of Court shall enter a final judgment accordingly.


DATED this 16th day of March, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[107] Docket 19 at 23.

[108] *Treichler,* 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)).

Case No. 3:20-cv-00242-SLG
Decision and Order
Page 22 of 22